UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

Present: The Honorable  **JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE**

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT (DKT. 16) AND DEFENDANT ANNING-JOHNSON COMPANY'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, COMPEL ARBITRATION AND STAY PROCEEDINGS (DKT. 18)**

**JS-6: Case Dismissed**

**I.      Introduction**

On June 15, 2021, Plaintiff Arthur Gutierrez ("Plaintiff") filed this putative class action against Anning-Johnson Company and numerous Doe defendants in the Los Angeles County Superior Court. Dkt. 1-1, at 17 ("Complaint"). The Complaint advances the following eight causes of action:

1. Unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*;
2. Failure to pay minimum wages in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1;
3. Failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, et seq.;
4. Failure to provide required meal periods in violation of Cal. Lab. Code §§ 226.7, 512, and the applicable IWC Wage Order;
5. Failure to provide required rest periods in violation of Cal. Lab. Code §§ 226.7, 512, and the applicable IWC Wage Order;
6. Failure to provide accurate itemized statements in violation of Cal. Lab. Code §§ 226, 226.2;
7. Failure to reimburse employees for required expenses in violation of Cal. Lab. Code § 2802;
8. Failure to provide wages when due in violation of Cal. Lab. Code §§ 201, 202, 203.

Dkt. 1-1, at 17.

On July 29, 2021, Defendant Anning-Johnson Company ("Defendant") removed the case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Dkt. 1. On August 26, 2021, Plaintiff filed a Motion to Remand the Action to State Court (the "Motion to Remand" (Dkt. 16)). On September 2, 2021, Defendant filed a Motion to Dismiss the Complaint or, in the Alternative, Compel Arbitration and Stay Proceedings (the "Motion to Dismiss" (Dkt. 18)). On October 11, 2021, Defendant filed an Opposition to Plaintiff's Motion to Remand to State Court (the "Opposition to Motion to Remand" (Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|----------|--------------------------|------|--------------|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

24)) as well as a Request for Judicial Notice (Dkt. 25). On October 25, 2021, Plaintiff filed a reply in support of the Motion to Remand ("Reply in Support of Motion to Remand" (Dkt. 32)) as well as Evidentiary Objections to Defendant's Request for Judicial Notice (Dkt. 33).

On October 12, 2021, Plaintiff filed an Opposition to Defendant's Motion to Dismiss (the "Opposition to Motion to Dismiss" (Dkt. 27)) as well as Objections to Evidence in Support of Defendant's Motion to Dismiss (Dkt. 28). On October 25, 2021, Defendant filed a Reply in Support of the Motion to Dismiss (the "Reply in Support of Motion to Dismiss" (Dkt. 30)) as well as a Response to Plaintiff's Objections (Dkt. 31).

A hearing on the Motion to Remand and the Motion to Dismiss took place on February 28, 2022. For the reasons provided in this Order, the Motion to Remand is **DENIED**, and the Motion to Dismiss is **GRANTED**.

## II.  Background

### A.  Parties

It is alleged that Plaintiff was employed by Defendant "as a non-exempt employee entitled to minimum wages, overtime pay and meal and rest periods from 2011 to January of 2021." Complaint ¶ 3. It is also alleged that Defendant is a corporation that at all relevant times conducted "substantial and regular business throughout California." *Id.* ¶ 1. It is alleged that Defendant operates a construction business that "provides services such as metal decking, wall and ceiling systems, fireproofing, and roofing services to their clients throughout California, including the Los Angeles, California location where PLAINTIFF worked." *Id.* ¶ 2.

### B.  Allegations in the Complaint

#### 1.  Alleged Classes

The Complaint presents two potential, putative classes. *First*, it alleges a "California Class" that includes "all individuals who are or previously were employed by Defendant Anning-Johnson in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of the original Complaint and ending on the date as determined by the Court . . . ." *Id.* ¶ 24. The First Cause of Action is brought on behalf of the California Class.

*Second*, the Complaint alleges a "California Labor Sub-Class" that includes all members of the California Class who were "classified as non-exempt employees . . . at any time during the period three (3) years prior to the filing of the original complaint and ending on the date as determined by the Court . . . ." *Id.* ¶ 34. The Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action are brought on behalf of this sub-class. *Id.*

#### 2.  Factual Allegations

The Complaint alleges numerous wage and hour violations against Defendant. It is alleged that Defendant failed to pay California Class members "for all their time worked." *Id.* ¶ 8. It alleges that, for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

example, Plaintiff and other California Class members were required to submit to Covid-19 screenings before beginning their shifts, which sometimes required the employees to "show up for work between five to thirty minutes early." *Id.* It is also alleged that Plaintiff and other California Class members were provided compensation through a non-discretionary incentive program, which Defendant "failed to include . . . into the 'regular rate of pay' for purposes of calculating overtime pay." *Id.* ¶ 10.

It is alleged that Plaintiff and other California Class members were at times interrupted during their off-duty meal breaks to complete tasks for Defendant, were required to perform work for more than five hours without receiving an off-duty meal break and were not given a second off-duty meal period when they worked ten hours in one workday. *Id.* ¶ 11. It is alleged that Plaintiff and other California Class members were denied the appropriate number of 10-minute rest periods based on the number of hours worked during each shift. *Id.* ¶ 12. It is also alleged that Defendant failed to compensate Plaintiff and other California Class members for time spent working while off-the-clock, in violation of the California minimum wage laws. *Id.* ¶ 13.

It is further alleged that Defendant's violations of the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Order were a matter of company policy and practice, and that Defendant intentionally and knowingly failed to compensate Plaintiff and the class members for all time worked. *Id.* ¶ 14. It is alleged that Defendant failed to provide Plaintiff and the California Class members with accurate and itemized wage statements, failed to reimburse and indemnify Plaintiff and the others for business expenses, and committed acts of unfair competition in violation of California law. *Id.* ¶¶ 15-20.

It is also alleged that Plaintiff was required to work for more than five hours in a shift without receiving an off-duty meal break, was required to work ten hours in a shift without a second off-duty meal period, and was required to remain "on the premises, on-duty and on-call, for [his] rest break[s]." *Id.* ¶ 21. It is alleged that Plaintiff "therefore forfeited meal and rest breaks without additional compensation," and received pay stubs that failed to accurately display his wages and hours worked. *Id.* It is alleged that Defendant has not paid Plaintiff either the overtime compensation or penalty wages owed to him. *Id.*

      C.      Relevant Provisions in the Collective Bargaining Agreement ("CBA")

Copies of the relevant collective bargaining agreements are attached to the Declaration of Jim Maras ("Maras Decl."), Dkt. 18-2 at 9, and the Declaration of Greg McClelland ("McClelland Decl."), Dkt. 18-2 at 259. Maras declares that the May 6, 2021 agreement, which is marked Exhibit 8 to the Maras Declaration, retained the substantive terms of the July 1, 2017 collective bargaining agreement ("July 2017 CBA"), with certain amendments as stated in the May 6, 2021 agreement ("May 2021 Amendment"). Maras Decl. ¶ 7. McClelland makes the same declaration. McClelland Decl. ¶ 6.

Section 8 of the May 2021 Amendment provides for arbitration of claims arising under the California Labor Code:

      Pursuant to California Labor Code Section 2699.6, the Parties hereby expressly and unambiguously waive the provisions of the California Private Attorneys General Act (PAGA), Labor Code Section 2698, et seq., and agree that none of the provisions of that statute apply to any of the employees covered by this Agreement. The parties further agree that this Agreement prohibits any and all violations of the California Labor Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

sections identified in Labor Code 2699.5 and 2699(f) as well as any others that would be redressable by PAGA, and that such claims shall be resolved exclusively through the Grievance-Arbitration procedure contained in this Agreement and shall not be brought in a court of law or before any administrative agency such as the California Labor Commissioner.

An arbitrator presiding over an arbitration conducted pursuant to the Grievance Procedure shall have the authority to make an award of any and all remedies otherwise available under the California Labor Code, except for an award of penalties that would be payable to the Labor and Workforce Development Agency.

All claims or disputes involving alleged violations of the Industrial Welfare Commission Wage Order 16, the California Labor Code, and the Fair Labor Standards Act, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq., as well as for associated penalties, not otherwise covered by the this Agreement, shall be subject to final and binding arbitration pursuant to Section 28 of this Agreement, To the extent permitted by law, all such claims or disputes shall be brought by or on behalf of the employee in their individual capacity only and not as a member of any purported class, collective or representative proceeding, any Arbitrator shall not have the authority to fashion a proceeding as a class, collective or representative action or to award relief to a group or class of employees in one arbitration proceeding. Nothing herein shall prohibit the parties from entering into an agreement to consolidate grievances before the Board of Adjustment hearing.

Dkt. 18-2 at 505-06.

Section 28 of the July 2017 CBA provides the grievance procedure. It states, in relevant part:

Boards of Adjustment shall be created for the settlement of disputes, except jurisdictional disputes, which shall be composed of two (2) representatives selected by the Union and two (2) representatives selected by the Employers. . . . Said Board shall organize within three (3) working days or as soon as practical and shall elect a Chairman and a Secretary and shall adopt rules of procedure which shall bind the contracting parties. Said Board shall have the power to adjust any differences that may arise regarding the meaning and enforcement of this Agreement. Within fifteen (15) days of the time any dispute is referred to it by either party, said Board shall meet to consider such dispute. If the Board cannot agree on any matter referred to it, the members thereof within three (3) days shall choose a fifth member who shall have no business or financial connection with either party. The decisions of said Boards shall be determined by a majority of their members and, pending such decisions, work shall be continued in accordance with the provisions of this Agreement. . . . No proceeding hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless called to the attention of the individual employer or the Local Union involved in writing within fifteen (15) days after the alleged violation is committed.

Dkt. 18-2 at 88-89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

      D.      Allegations in the Notice of Removal and Supporting Evidence

            1.      Notice of Removal

In the Notice of Removal, Defendant states that it is a citizen of Delaware and Illinois. Dkt. 1 at 9. The declaration of Kathy Tomaska proffers evidence in support of this statement. *See* Declaration of Kathy Tomaska ("Tomaska Decl."), Dkt. 1-1 ¶ 3. Defendant also states that, based on employment records for Plaintiff, Plaintiff is a citizen of California. Dkt. 1 at 9. The declaration of Kevin Price proffers evidence in support of this statement. Declaration of Kevin Price ("Price Decl."), Dkt. 1-2 ¶ 6. Based on the foregoing, Defendant contends the minimal diversity requirement of 28 U.S.C. § 1332(d) is satisfied.

Defendant also contends there are more than 100 potential class members. Defendant states that Plaintiff's alleged California Labor sub-class would include "at least 2,598 individuals." Defendant's statement is supported by evidence proffered in the Tomaska Declaration. Dkt. 1-1 ¶¶ 11-12.

Finally, Defendant states that the amount in controversy exceeds $5 million. In support of this statement, Defendant provides the following estimates of Plaintiff's claims, as well as a claim for attorney's fees of at least 25% of any recovery:

| Claim | Asserted Amount in Controversy |
|---|---|
| Overtime Claim | $1,779,155 |
| Meal and Rest Period Claims | $4,082,383 |
| Wage Statement Claim | $2,456,900 |
| Waiting Time Penalties Claim | $17,613,084 |
| Attorney's Fees | $1,059,013 |
| Total | $26,990,536 |

To support these calculations, Defendant relies on the Tomaska Declaration. Dkt. 1-1. Tomaska declares that she is the Chief Financial Officer for Defendant and is responsible for the administration of Defendant's "payroll and accounting functions." *Id.* ¶¶ 1, 6. Tomaska also declares that she has access to Defendant's business records, including "those pertaining to current and former employees," and has "knowledge of how they are maintained." *Id.* Tomaska then declares that, from 1997 to April 4, 2021, Defendant "utilized Computer Guidance Corporation's eCMS system for payroll and accounting data collection and processing for non-exempt construction employees." *Id.* ¶ 9. Tomaska then declares that the system includes data on the "identity and number of employees, rates of pay, work days, and hours worked." *Id.*

Tomaska declares that she can compile reports summarizing data from the system. *Id.* Tomaska declares that, since April 5, 2021, Defendant has "utilized Coins Construction Software for payroll and accounting data collection and processing for non-exempt construction employees." *Id.* That system collects the same information and can also be queried and with data compiled into reports. *Id.* Tomaska declares that data is input into the two systems contemporaneously as employees work, and that the records are maintained in the regular course of business. *Id.*

Tomaska further declares that she segregated data for Defendant's "California non-exempt construction employees . . . and ran reports exclusively from the data for that group of employees." *Id.* ¶ 10. During

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

the three-year period prior to the filing of the Complaint, Tomaska declares that Defendant employed 2598 non-exempt employees. *Id.* ¶ 12.

As to the overtime claim, Tomaska declares that she determined there were 29,359 discrete work weeks during the three-year period prior to the filing of the Complaint when a non-exempt employee worked at least 40 hours. *Id.* ¶ 14. Tomaska determined the average hourly rate of pay during the three-year period was $40.40. *Id.* ¶ 15. Then, assuming one additional hour of work was allegedly unpaid at the 1.5 times the overtime rate, Tomaska declares that she calculated the total amount in controversy to be $1,779,155.40. *Id.* ¶ 16.

As to the rest and meal period claims, Tomaska declares that she identified 510,545 discrete workdays in which an employee worked 3.5 hours or more. *Id.* ¶ 18. Tomaska declares that she assumed a 10% violation rate for the rest period claim, and one hour of premium pay for each alleged missed rest period. *Id.* Based on those assumptions, Tomaska declares that she calculated the amount of the rest period claim as $2,062,601.80. *Id.* Tomaska declares that she identified 499,946 discrete workdays during which an employee worked greater than five hours, and assumed a 10% violation rate for the meal period claim, with one hour of premium pay as compensation. *Id.* ¶ 19. Based on those determinations, Tomaska declares that the meal period claim totals $2,019,781.84. *Id.* Tomaska further declares that the combined amount in controversy for the rest and meal period claims is $4,082,383.64. *Id.*

As to the inaccurate pay statement claims, Tomaska declares that Defendant pays employees on a weekly basis, leading to 52 sets of pay statements during any 52-week period. *Id.* ¶ 22. Tomaska declares that during the one-year period preceding the Complaint, the average number of employees working each week was 622, and, consequently, Defendant issued an average of 622 pay statements per week. *Id.* ¶ 23. Tomaska declares that she understood Plaintiff to be seeking maximum compensation for all wage statements, with a $4000 cap per individual employee. *Id.* ¶ 24. Tomaska declares that she calculated the amount at issue through the wage statement claim as $2,456,900. *Id.*

As to the waiting time penalties claim, Tomaska declares that, during the three-year period preceding the Complaint, there were 2095 employees who had a break in service of 30 days or more. *Id.* ¶ 26. Tomaska declares that she determined the average hourly rate of pay for those employees was $39.03. *Id.* ¶ 27. Tomaska further declares that she determined those employees worked an average of 7.18 hours per day, which results in an average daily rate of pay $280.24. *Id.* ¶ 28. Assuming that every employee who had a break in service of at least 30 days during this period was owed wages, and that Defendant never paid them, Tomaska declares that she determined the total amount in controversy through the claim is $17,613,084. *Id.* ¶ 29.

2.    Supplemental Tomaska Declaration

In support of the Opposition to Plaintiff's Motion to Remand, Defendant submitted a Supplemental Declaration of Kathy Tomaska. Dkt. 24 at 34 ("Tomaska Supp. Decl."). The declaration restates Tomaska's experience and access to Defendant's personnel records. *Id.* ¶ 1-4. Tomaska also declares that "those records will be made available to Arthur Gutierrez, via his counsel, for examination simultaneously with the filing of this Supplemental Declaration, with redactions of names and social security numbers." *Id.* ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

In general, the Supplemental Declaration provides the same information as the initial declaration, but includes more details. Tomaska provides statements about the specific workbooks she used and words she queried. *Id.* ¶¶ 11-13. Tomaska also provides significant detail as to how she calculated the amounts in controversy for certain of Plaintiff's claims.

Tomaska further declares that the initial declaration included one error. *Id.* ¶ 28. Tomaska declares that the initial declaration identified 2095 employees who had a break in service of 30 days or more during the three years prior to the filing of the Complaint. *Id.* Tomaska declares that she realized one of the records was a duplicate, and that 60 individuals had returned to the payroll within 30 days. *Id.* Thus, the number of employees with a break in service of 30 days or more was 2034. *Id.* Using this revised figure, Tomaska declares that she determined the amount in controversy as to waiting time period claim is $17,246,082.60, rather than the $17,613,084 amount provided in the initial declaration. *Id.*

**III.   Plaintiff's Motion to Remand**

     A.   Judicial Notice and Evidentiary Objections

         1.   Defendant's Request for Judicial Notice (Dkt. 25)

Defendant requests judicial notice of a document in support of Defendant's Opposition to the Motion to Remand. Dkt. 25 (the "RFN"). It is a declaration by Shani O. Zakay, Plaintiff's counsel, that was filed in support of Zakay's motion for attorney's fees in another case. *Id.* at 2. The declaration was filed on December 11, 2020, in a case in the Marin County Superior Court. *Id.* In Defendant's Opposition, Defendant argues that the declaration shows that Zakay has participated in 13 wage and hour class settlements "in which his firm was awarded attorneys' fees in the amount of one-third of those settlements between 2015 and 2019." Dkt. 24 at 29. Defendant seeks to use the document as evidence supporting the viability of the 25% attorney's fees estimate in the Notice of Removal. *Id.*

Federal Rule of Evidence 201 provides that the Court may take notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court may take notice of documents filed in other cases, but "only for the limited purpose of recognizing the 'judicial act' that the order represents on the subject matter of the litigation." *Neilson v. Union Bank of Cal. N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) (citation omitted).

The Court declines to take judicial notice of the document for the truth of the matter asserted. *See* Fed. R. Evid. 201(b); *Neilson*, 290 F. Supp. 2d at 1113 (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings" (citation omitted)). Although the authenticity of the document has not been challenged, to determine that the document supports the use of a 25% contingency rate in the calculation of attorney's fees in this action, would require other evidence to show why the actions are sufficiently similar to warrant that determination. Further, given the amounts in controversy shown by other elements of the matters at issue, an assessment of the potential claim for attorney's fees is unnecessary to reach the necessary threshold. Therefore, the RFN is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

2.      Plaintiff's Evidentiary Objections (Dkts. 17, 33)

*First*, Plaintiff objects to portions of the Tomaska Declaration, which, as noted, was submitted with the Notice of Removal. Dkt. 17. Plaintiff objects to Tomaska's determinations regarding the relevant personnel data collected by Defendant because on the grounds that she does not have personal knowledge, her statements lack foundation, and are hearsay. Dkt. 17 at 2-7.

Tomaska's declaration is sufficient to show that she has an adequate foundation for her statements as to the number of employees and the data supporting the potential range of claims that are at issue. Tomaska declares that she is the Chief Financial Officer of Defendant, has personal knowledge of the business records at issue, including how they are maintained, and is responsible for the administration of Defendant's payroll and accounting processes. Tomaska Decl. ¶¶ 1, 6. Tomaska explains the software used by Defendant to collect the relevant data, and that her statements throughout her declaration are based on a review of those records. *Id.* ¶ 9. Tomaska has provided an adequate foundation for her statements. *See Gant v. ALDI, Inc.*, No. LA CV19-03109 JAK (PLAx), 2020 WL 1329909, at *4 (C.D. Cal. Mar. 20, 2020) (a similar declaration from an executive "has an adequate foundational basis for its calculations of the amounts at issue").

Tomaska's declaration is also sufficient to show personal knowledge. Declarations from human resources personnel and similar administrative managers are routinely accepted as admissible evidence to support the basis for a CAFA removal. *See Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017) (collecting cases). "A declaration from a person with knowledge of the relevant data is clearly an appropriate form of evidence." *Ruano v. Sears Roebuck & Co.*, No. CV 15-6060 PSG (FFMx), 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015). "[N]either *Ibarra* nor *Dart Cherokee* calls into question the long-standing practice of accepting such declarations in lieu of the underlying records." *Amaya v. Consol. Container Co., LP*, No. 2:15-CV-03369-SVW-PLA, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015).

Not every such declaration provides admissible, necessary evidence. For example, if the data offered is insufficient or lacks a sufficient foundation to support certain assumptions or calculations, the declaration may be insufficient to establish the amount in controversy. *Akana v. Estee Lauder Inc.*, No. LA CV-19-00806-JAK-PLAx, 2019 WL 2225231, at *5-6 (C.D. Cal. May 23, 2019). Whether certain assumptions by Tomaska are adequately supported by evidence is addressed in the analysis of the amount in controversy below. Plaintiff's hearsay objection is also unpersuasive. *See Alvarez*, 2017 WL 5952181, at *2 ("A declaration from a person with knowledge of the relevant data is clearly an appropriate form of evidence." (citation omitted)). For these reasons, Plaintiff's objections to the Declaration of Kathy Tomaska are **OVERRULED**.

*Second*, Plaintiff objects to the Defendant's RFN and certain aspects of the Supplemental Declaration of Kathy Tomaska. Dkt. 33. Plaintiff's objection with respect to Defendant's RFN is **SUSTAINED**, as explained above.

Plaintiff's objections to the Supplemental Declaration of Kathy Tomaska are the same as to her initial declaration, with the added objections of relevance under Rule 401 and unfair prejudice under Rule 403. *Id.* at 3-6. For the reasons stated above, the objections are unpersuasive. Further, the statements that Plaintiff identifies in the Supplemental Declaration are relevant because they are proffered to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

provide support for how Defendant's amount-in-controversy figure was calculated, and do not create unfair prejudice. Therefore, Plaintiff's objections to the Supplemental Declaration of Kathy Tomaska are **OVERRULED**.

        B.      Analysis

           1.      CAFA Jurisdiction

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

               a)      Class Size and Minimal Diversity

Plaintiff does not challenge the minimum class size and minimal diversity requirements. *See generally* Dkt. 16. Therefore, both are satisfied.

               b)      Amount in Controversy

                    (1)      <u>Legal Standards</u>

"In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra*, 775 F.3d at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*

A defendant is required only to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation marks omitted). The parties may submit evidence, including affidavits or declarations, or other "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

"[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions underlying a defendant's "chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* (quoting *Ibarra*, 775 F.3d at 1199). Assumptions "may be reasonable if [they are] founded on the allegations of the complaint." *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1198-99).

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotation marks, citation and brackets omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796. For example,

> [a] state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or (as in this case) not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims). The court's determination regarding the amount of attorneys' fees at stake must take into account these statutory and contractual restrictions.

*Fritsch*, 899 F.3d at 796. Moreover, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Id.*

As a general rule of interpretation in connection with evaluating the propriety of a removal under CAFA, "Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015). "Congress intended CAFA to be interpreted expansively." *Ibarra*, 775 F.3d at 1197.

(2)   Analysis

(a)   Overtime Claim

The Notice of Removal contends that the overtime claim seeks at least $1,779,155 for the alleged violations. Dkt. 1 at 14-15. The Notice provides that Defendant determined there were "a total of 29,359 discrete work weeks" during the three years prior to the filing of the Complaint in which a non-exempt employee worked greater than or equal to 40 hours. *Id.* at 15. It also determined that the average hourly rate during that period for non-exempt construction employees was $40.40 per hour. *Id.* Defendant then estimated one hour per week of off-the-clock work and calculated the amount in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

controversy to be $1,779,155.40. *Id.* at 15-16.

Plaintiff contends that Defendant's assumption of a 100% violation rate for each work week is unreasonable and unsupported by evidence. Dkt. 16-1 at 13. Plaintiff argues that the Complaint alleges only that Plaintiff and California Class members were "from time to time" required to submit to Covid-19 screenings before work, which is insufficient to support a reasonable assumption of a 100% violation rate. *Id.* at 11.

Plaintiff is correct that the Complaint repeatedly alleges that Defendant's overtime violations occurred "from time to time." For example, the Complaint alleges that "[f]rom time to time," Defendant required Plaintiff and class members to "work without paying them for all the time they were under [Defendant's] control." Complaint ¶ 8. It also alleges that, "from time to time," Plaintiff and the class members were required to undergo Covid-19 screenings before their shifts, and as a result forfeited minimum wage and overtime compensation. *Id.* The Complaint makes similar allegations with respect to meal breaks when it alleges that Plaintiff and class members were "from time to time" unable to take meal breaks and interrupted during off-duty meal periods. *Id.* ¶ 11. Those allegations do not reasonably support a 100% violation rate for each week in which an employee worked 40 or more hours.

Defendant contends that the Complaint alleges the failure to pay overtime was "systematic" and that unpaid meal periods were "often" interrupted. Dkt. 24 at 28. Those terms do not imply that such violations were occurring for all class members during each work week. *See Melead v. TVI, Inc.*, No. SACV 20-01224-CJC(ADSx), 2020 WL 5407456, at *3 (C.D. Cal. Sept. 9, 2020) ("The gap between a 100% violation rate and violations 'from time to time' is immense."); *cf. Gant v. ALDI, Inc.*, No. LA CV19-03109 JAK (PLAx), 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) (determining that allegations of a "pattern and practice" of meal and rest break violations supported the assumption that one violation occurred per employee, per week). Although the Complaint alleges that Defendant's "uniform policy and practice" was not to pay Plaintiff and class members for all time worked (Complaint ¶ 8), the specific allegations relating to Plaintiff's claims suggest an alleged violation rate of less than 100%.

Based on the allegations in the Complaint, it is unreasonable to assume, without additional evidence, that an overtime violation occurred for each employee, each work week. *See Melead*, 2020 WL 5407456, at *3; Tomaska Decl. ¶ 16. For the reasons provided below, however, even without including the amounts associated with this aspect of the claims, Defendant has established the amount in controversy is greater than $5 million.

(b)     Meal and Rest Break Claims

The Notice of Removal states that Plaintiff's meal and rest break claims place in controversy at least $4,082,383. Dkt. 1 at 16. That estimate is based on the assumption that there is a ten percent violation rate for rest and meal periods, respectively, per workday, which assumes that an employee in the alleged class missed an appropriate opportunity for a rest or meal period once every two weeks. Dkt. 1 at 17, 19. This is based solely on the allegation in the Complaint that Plaintiff and California Labor sub-class members "were often not fully relieved of duty by Defendants for their meal periods." Complaint ¶ 89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

In the Motion to Remand, Plaintiff argues that Defendant "offers no factual evidence to support its assumption that 20% of shifts worked by every relevant employee during the entire applicable period involved a violation of meal breaks or rest breaks." Dkt. 16-1 at 12 (emphasis omitted). Defendant contends that the 10% assumed violation rate is reasonable based on the allegations in the Complaint that Plaintiff and other class members were "often" required to continue certain duties during meal periods or had rest breaks interrupted. Dkt. 24 at 22-23. The 10% violation rate assumed by Defendant is "reasonable" because it is "founded on the allegations of the complaint." *See Arias*, 936 F.3d at 925. Further, Plaintiff has not offered specific evidence that rebuts Defendant's determination. Thus, Defendant has established by a preponderance of the evidence that the meal and rest break claims place approximately $4,082,383 in controversy.

(c)     Wage Statement Claim

The Notice of Removal states that Plaintiff's wage statement claim places in controversy $2,456,900. Dkt. 1 at 20. The Notice provides that, based solely on the allegations in the Complaint, it can be reasonably assumed that "each and every pay statement issued to a member of the putative class" was an inaccurate pay statement. *Id.* at 20-21.

Plaintiff argues that Defendant's assumed 100% violation rate lacks evidentiary support and is "contrary to the allegations in Plaintiff's [C]omplaint," which alleges that Defendant "from time to time" provided Plaintiff and other class members with inaccurate wage statements." Dkt. 16-1 at 13 (quoting Complaint ¶ 15). Defendant argues that, based on the Complaint and the alleged "frequency with which off-the-clock work, improper overtime calculations, and rest or meal break violations occurred . . . [Defendant] reasonably concluded that . . . the derivative wage statement violation occurred at least once during every weekly pay period." Dkt. 24 at 26.

Generally, "courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." *Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 WL 3655666, at *3 (C.D. Cal. July 31, 2018) (citation omitted). Defendant has provided evidence through the Tomaska Declarations regarding the potential size of the putative classes and the number of wage statements at issue. Additionally, Defendant has made reasonable assumptions regarding the alleged violations based on information from the Complaint. It is determined above that a 10% violation rate for meal and rest breaks, respectively, is a reasonable assumption. Although the additional assumption of an average five-day work week, with eight hour shifts each day, would result in an average of one meal break violation and one rest break violation every two weeks, that is insufficient to support the 100% violation rate because there is no evidence that the violations would occur during separate weeks, nor that employees averaged a five-day work week with eight hour shifts each day.

Defendant also argues that the allegations involving Defendant's failure to pay for all time worked, and failure to properly compute overtime, further support the assumption of a 100% violation rate. Dkt. 24 at 26. Defendant also points out that the Complaint alleges Defendant failed to include employees' incentive compensation in their regular rate of pay. *Id.* (citing Complaint ¶ 10). Plaintiff contends that the Complaint specifically states that Defendant "from time to time" provided Plaintiff and other class members with wage statements that violated California law. Complaint ¶ 17; Dkt. 16-1 at 13; Dkt. 32 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

Based on the 10% violation rate for meal and rest break violations adopted above, a wage statement violation rate of 50% is a reasonable estimate. Assuming a 5-day work week and that, on average, meal and rest break violations occur on the same day or during the same week, a wage statement would be inaccurate every other week. Therefore, the amount in controversy as to this claim is approximately $1,228,450. Combined with the amount in controversy of approximately $4,082,383 for the meal and rest break claims, the amount in controversy totals $5,310,833. Thus, based on these two claims alone, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

(d)    Waiting Time Penalty Claim

The Notice of Removal asserts that the waiting time penalties claim puts in controversy $17,613,084. Dkt. 1 at 22. The Notice provides that there were 2095 non-exempt construction employees in California who had a break in service of at least 30 days. *Id.* at 23. It states that, based on the Complaint, "Plaintiff would necessarily seek recovery of waiting time penalties on behalf of these 2,095 employees." *Id.* at 23-24. Defendant's Opposition makes clear that the calculation relies on a 100% violation assumption, which Defendant argues is reasonable based on the allegations in the Complaint. Dkt. 24 at 19. Defendant also revises the total calculation in the Notice of Removal's, stating that 61 individuals previously thought to have a 30-day or greater break in service were improperly included. *Id.* at 21. Thus, Defendant's revised calculation states that the correct amount in controversy for the claim is $17,246,082.60. *Id.*

Plaintiff argues that the 100% violation assumption is unreasonable because the Complaint does not allege that all individuals whose employment was terminated were subject to unpaid wages violations. Dkt. 16-1 at 13-15. Although Plaintiff's argument is persuasive, Plaintiff does not suggest a different violation percentage that would be more accurate. *Id.* at 16-17. Nor does Plaintiff provide any affirmative evidence that a lower violation percentage is appropriate.

Even assuming a 10% violation rate, 90% less than that assumed by Defendant, the claim would place in controversy $1,761,308.40. *See* Dkt. 1 at 24. That amount, combined with the figures from the meal and rest break claims, leads to a total amount in controversy of $5,843,691.40. Therefore, even excluding the wage statement claim, the amount in controversy would exceed $5 million. The total amount of controversy for the meal and rest break claims, the wage statement claim and the waiting time penalty claim is approximately $7,072,141.40. Because the figures for the amounts in controversy for these three claims total more than $5 million, it is unnecessary to calculate the amounts in controversy as to the remaining claims.[1]

(e)    Attorney's Fees

Although the amount in controversy requirement has been met without the consideration of the claimed attorney's fees, Defendant's calculation of this is addressed in the interest of completeness. A potential award of attorney's fees "may be included in the amount in controversy." *Tennison v. Hub Group Trucking, Inc.*, No. LA CV20-05076 JAK (SPx), 2020 WL 7714702, at *8 (C.D. Cal. Dec. 28, 2020).

---

[1]  As noted above, Defendant identified an amount in controversy for only five of the eight causes of action alleged in the Complaint. Dkt. 1 at 14. Defendant does not address the unfair competition, minimum wages, or reimbursement claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

Defendant has failed to present any evidence as to why an award of 25% is reasonable. *Id.* ("The Ninth Circuit has 'declined to adopt a per se rule that "the amount of attorney's fees in controversy in class actions is 25 percent of all other alleged recovery."'" (quoting *Arias*, 936 F.3d at 928)). However, that issue is one that will be addressed anew, should it arise in this matter.

\*      \*      \*

For the foregoing reasons, Defendant has established the amount in controversy exceeds $5 million. Therefore, Plaintiff's Motion to Remand is **DENIED**.

## IV. Defendant's Motion to Dismiss

### A. Evidentiary Objections

Plaintiff submitted objections to evidence Defendant proffered in support of the Motion to Dismiss. Dkt. 28. Plaintiff objects to the admission of the copies of the July 2017 CBA and the May 2021 Amendment, which are attached as exhibits to the Maras and McClelland declarations, respectively, as well as the sections of those declarations in which those exhibits are described. The specific objections are as follows: "Lacks Personal Knowledge, Lacks Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802); Relevance (Fed. R. Evid. 401); and Probative Value Substantially Outweighed by Danger of Unfair Prejudice, Confusing the Issues (Fed. R. Evid. 403)." Plaintiff does not provide any details as to the bases for these objections.

Plaintiff's objections are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (quoting *Doe v. Starbucks, Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)). Accordingly, there is no obligation to "scrutinize each of [Plaintiff's] individual objections or fully analyze identical objections raised as to each fact." *Ramsey v. Siskiyou Hosp., Inc.*, No. 2:14-CV-01908KJMCMK, 2016 WL 3197557, at *1 (E.D. Cal. June 9, 2016) (citations omitted).

Further, because the objections under Fed. R. Evid. 402 and 403 are duplicative of arguments made in the briefing, which are considered in this Order, there is a second, independent basis not to address them individually. *World Axe Throwing League, Inc. v. Cold Steel Inc.*, No. 220CV11407JAKEX, 2023 WL 2372059, at *2 (C.D. Cal. Feb. 14, 2023) (citing *McCarthy v. R.J. Reynolds Tobacco Co.*, No. CIV2092495WBSDAD, 2011 WL 13405571, at *1 (E.D. Cal. Mar. 31, 2011)). Therefore, those objections are **OVERRULED** for the purpose of this Order.

Plaintiff's objections under Fed. R. Evid. 602 are **OVERRULED** because Maras and McClelland sufficiently explain their roles in their respective organizations and how they obtained knowledge of the agreements. *See* Maras Decl. ¶¶ 1, 7; McClelland Decl. ¶¶ 1, 3, 8.

Plaintiff's objections under Fed. R. Evid. 802 to the statements by Maras and McClelland are **OVERRULED** because both declarants would testify to their statements if called as witnesses. Maras Decl. ¶ 1; McClelland Decl. ¶ 1. Plaintiff's hearsay objections to the July 2017 CBA and May 2021 Amendment are **OVERRULED** because both are authenticated business records.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

B.    Legal Standards

Employers and unions can enter into valid CBAs that apply retroactively to the bargaining period. *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1198 (C.D. Cal. 2015) (collecting cases). Further, "[a]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement." *Franco v. Greystone Ridge Condominium*, 39 Cal. App. 5th 221, 230 (2019) (citation omitted); *see also O'Conner v. Hilton Hawaiian Village*, 763 F. Supp. 1544, 1548 (D. Haw. 1990) (because the relevant CBA "provide[d] for retroactive effect," it "cover[ed] the time in which O'Conner worked at Hilton").

Furthermore, an employee's right to file civil action in a judicial forum for alleged violations of statutory rights, can be waived by a collective bargaining agreement where such a waiver is "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80-81 (1998); *see also Powell v. Anheuser-Busch Inc.*, 457 F. App'x 679, 680 (9th Cir. 2011). However, provisions that attempt "to provide a blanket waiver to all federal and state causes of action[] have been routinely rejected by both the U.S. Supreme Court and Ninth Circuit." *Smith v. Serv. Employees Int'l Union, Local 521*, No. 16-CV-02547-LHK, 2016 WL 4268713, at *8 (N.D. Cal. Aug. 14, 2016) (collecting cases). There is a consensus among circuit courts that a CBA must identify specific statutes to provide a clear and unmistakable waiver. *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 558 (9th Cir. 2016) (citing *Ibarra v. UPS*, 695 F.3d 354, 356-60 (5th Cir. 2012)); *see also Powell*, 457 F. App'x at 680.

*Smith* held that a blanket waiver was not clear and unmistakable where the employer agreed to "comply with all applicable federal, state and local laws and regulations, including, but not limited to, provisions of the California Labor Code, Industrial Welfare Commission's Orders and Fair Labor Standards Act" and the employees "agree[d] to resolve any wage and hour claims . . . arising from . . . these other federal, state and local laws through the grievance and arbitration procedure." 2016 WL 4268713, at *9. *Martinez v. J. Fletcher Creamer & Son, Inc.*, No. CV 10-0968 PSG (FMOx), 2010 WL 3359372, at *4 (C.D. Cal. Aug. 13, 2010), addressed a "narrow" question: "[C]an a collective bargaining agreement that does not mention any of the statutes at issue constitute a 'clear and unmistakable' waiver of an employee's right to sue in a judicial forum under those statutes?" *Id. Martinez* held that it was "compelled to answer in the negative." *Id.* It was "undisputed" that the CBA in *Martinez* did "not directly refer to any of the relevant statutes," notwithstanding that the relevant CBA provided that "[a]ny dispute or grievance arising from this Wage Order shall be processed under and in accordance with [the grievance procedure]" and that the grievance procedure "shall be the exclusive method for resolving all alleged violations o[f] this Wage Order . . . ." *Id.* at *1. Because there was no reference to the specific statutes at issue, *Martinez* determined that there was no clear and unmistakable waiver.

Other district courts have recognized an apparent "agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s clear and unmistakable standard." *Wawock v. CSI Electric Contractors, Inc.*, No. 2:14-CV-06012 SVW (MANx), 2014 WL 5420900 (C.D. Cal. Oct. 21, 2014) (quoting *Batten v. SS/ Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999), *aff'd* 649 F. App'x 556 (9th Cir. 2016); *see also Preddy v. Davidson Hotel Co. LLC*, No. 18-CV-07730 DMR, 2019 WL 3254237, at *4 (N.D. Cal. July 19, 2019); *Hoko v. Transit Am. Servs.*, No. 14-CV-01327 LHK, 2014 WL 3963033, at *6 (N.D. Cal. Aug. 13, 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

C.    Analysis

1.    Retroactivity

The May 2021 Amendment is retroactive and applies to the time period when Plaintiff was employed by Defendant. The Complaint alleges that Plaintiff was employed by Defendant from 2011 to January 2021. Complaint ¶ 3. The Maras and McClelland declarations, respectively, provide that the July 2017 CBA was initially in effect from July 1, 2017, to June 30, 2020. Maras Decl. ¶ 5; McClelland Decl. ¶ 4. The July 2017 CBA was later extended until May 16, 2021. Maras Decl. ¶ 6; McClelland Decl. ¶ 5. On May 6, 2021, an agreement was reached as to the May 2021 Amendment, which was made effective retroactive to July 1, 2020. Maras Decl. ¶ 7; McClelland Decl. ¶ 6; *see also* Dkt. 18-2 at 254 ("This Agreement is made and entered into this 6th day of May, 2021, retroactive to July 1, 2020 . . . ."). Thus, the May 2021 Amendment applied to dates during which Plaintiff worked for Defendant, *i.e.*, July 2020 through January 2021.

Plaintiff argues that the May 2021 Amendment does not apply to him because he was not employed by Defendant when it was signed. Dkt. 27 at 16-19. Plaintiff argues that "the Union no longer represented Plaintiff and therefore, even if the arbitration agreement applies retroactively – which Plaintiff denies – the Union could not legally bind Plaintiff, **a former employee** of Defendant, to CBA II or the May 6, 2021 Amendment thereto." *Id.* at 18. Plaintiff also argues that Defendant has failed to establish that "Plaintiff consented to the arbitration agreement contained in the May 6, 2021 Amendment." *Id.* at 19.

Plaintiff also contends that Defendant has failed to establish that Plaintiff assented to the May 2021 Amendment, as "the undisputed facts establish that the Union unilaterally modified its [July 2017 CBA] by including an arbitration agreement during the pendency of this proceeding." *Id.* at 21. In support of this position, Plaintiff cites *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 59 (2013), and *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015).

The same retroactivity question was previously considered in both *Hall* and *O'Conner*. In *Hall*, the plaintiffs were hired by the defendant to work as stagehands on January 11, 2015. 146 F. Supp. 3d at 1191. They were discharged on January 15, 2015. *Id.* Subsequently, on June 22, 2015, the defendant and the union entered a collective bargaining agreement that expressly covered work performed between October 1, 2014, and September 30, 2016. *Id.* The plaintiffs there argued that the agreement did not apply "because it had not been negotiated at the time they worked for [the defendant]." *Id.* at 1198. *Hall* held that, because employers and unions "can enter into a valid CBA that retroactively covers the bargaining period," the agreement "applied retroactively and governed plaintiffs' employment in January 2015." *Id.* at 1198-99.

Similarly, in *O'Conner*, the plaintiff was employed from approximately August 11, 1987, to September 4, 1987. 763 F. Supp. at 1545. The relevant CBA was entered into on December 3, 1987, and stated that it "shall remain in effect from March 1, 1987, until and including February 28, 1990." *Id.* at 1548. *O'Conner* concluded that because the CBA expressly stated its retroactive effect, it "cover[ed] the time in which O'Conner worked [for the defendant]." *Id.*

The circumstances presented here are analogous. The May 2021 Amendment expressly stated its retroactive effect that encompasses a period during which Plaintiff was employed by Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|----------|--------------------------|------|--------------|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

Therefore, the terms of the May 2021 Amendment, and its incorporation of the July 2017 CBA, apply to Plaintiff's claims.[2]  *See also Franco*, 39 Cal. App. 5th at 230 ("[T]he *Salgado* court rejected the argument that claims that have accrued before an arbitration agreement is executed are generally excluded from arbitration . . . . '[A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement.'" (citations omitted)).

Furthermore, Plaintiff's argument that Defendant unilaterally modified the CBA is unpersuasive. *Franco* considered a similar argument and rejected the plaintiff's reliance on *Avery* and *Cobb*. 39 Cal. App. 5th at 231-32. *Franco* explained that both *Avery* and *Cobb* dealt with one party's unilateral modification of an arbitration agreement. *Id. Franco*, however, did "not involve a unilateral modification of an arbitration agreement" because "[t]here is no dispute plaintiff agreed to the terms of the Agreement." *Id.* at 232.

Plaintiff contends that the modification was unilateral because he did not expressly consent to the May 2021 Amendment. That argument fails in light of the agreement between the union and the employer, which stated expressly that it had retroactive effect. Plaintiff does not dispute that the union represented him while he was employed by Defendant. The analysis in *Hall* and *O'Conner*, which determined that the respective plaintiffs were bound by the later-signed CBAs, is persuasive under these circumstances.

> 2.    Waiver

The May 2021 Amendment and July 2017 CBA, when considered collectively, present the basis for a clear and unmistakable waiver of Plaintiff's right to raise certain statutory claims in a judicial forum. *See Olea v. Teichert Pipelines, Inc.*, No. 2:21-CV-01675-RGK-PD, 2021 WL 1839683, at *4-5 (C.D. Cal. May 7, 2021). Section 8 of the May 2021 Amendment provides that the parties agree to "waive the provisions of the California Private Attorneys General Act (PAGA), Labor Code Section 2698, et seq.," pursuant to Cal. Lab. Code § 2699.6. Dkt. 18-2 at 505. Section 2699.6 provides that PAGA "shall not apply to an employee in the construction industry with respect to work performed under a valid collective bargaining agreement . . . ." Cal. Lab. Code § 2699.6(a). The statute requires that such an agreement prohibits "all violations of this code that would be redressable pursuant to this part . . . provides for a grievance and binding arbitration procedure to redress those violations" and "[e]xpressly waives the requirements of this part in clear and unambiguous terms." *Id.*

The May 2021 Amendment also provides that it

> prohibits any and all violations of the California Labor Code sections identified in Labor Code 2699.5 and 2699(f) as well as any others that would be redressable by PAGA, and that such claims shall be resolved exclusively through the Grievance-Arbitration procedure contained in this Agreement and shall not be brought in a court of law or before any administrative agency such as the California Labor Commissioner.

Dkt. 18-2 at 505.

---

2  The May 2021 Agreement does not expressly refer to the July 2017 CBA. Dkt. 18-2 at 503-06. However, Plaintiff does not dispute that the intent of the May 2021 Agreement was to amend and incorporate the July 2017 CBA. *See generally* Dkt. 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

The May 2021 Amendment also states that all disputes involving "violations of the Industrial Welfare Commission Wage Order 16, the California Labor Code, and the Fair Labor Standards Act, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq. . . . shall be subject to final and binding arbitration pursuant to Section 28 of this Agreement." *Id.* at 506. Cal. Lab. Code § 2699.5, which is expressly referenced in the May 2021 Amendment, includes numerous sections within the California Labor Code, including 201, 202, 203, 226 (paragraphs 1 through 5, 7, and 9 of subdivision (a)), 226.7, 512, 510, 1194, 1197, 1197.1, and 2802. Although the Opposition to the Motion to Dismiss does not address whether all of Plaintiff's claims arise under Section 2699.5, attached to the Opposition is the April 7, 2021 Notice of Violations that Plaintiff's counsel sent to the California Labor and Workforce Development Agency pursuant to PAGA. The Notice only cites statutes that are listed in Section 2699.5. Dkt. 27-2 at 2.

The May 2021 Amendment also specifies an arbitration procedure. It provides that claims are to be "resolved exclusively through the Grievance-Arbitration procedure contained in this Agreement," and that they are "subject to final and binding arbitration pursuant to Section 28 of this Agreement." Dkt. 18-2 at 505-06. Section 28 of the July 2017 CBA provides a process for settling disputes that involves "Boards of Adjustment . . . created for the settlement of disputes . . . ." Dkt. 18-2 at 451.

Plaintiff argues that there has been no waiver for two reasons. *First*, Plaintiff contends that the grievance procedure in the July 2017 CBA provides only for resolution of grievances "regarding the meaning and enforcement of [the CBA]." Dkt. 27 at 22; *see also id.* at 26-27. The language in the May 2021 Amendment and the July 2017 CBA, however, is clear as to this issue. Section 28 provides that the "Boards of Adjustment shall be created for the settlement of disputes." Dkt. 18-2 at 451. Section 28 also states: "Said Board shall have the power to adjust any differences that may arise regarding the meaning and enforcement of this Agreement," but does not state that it is the sole or exclusive authority of the Board to resolve such differences. *Id.* The language of Section 28, does not conflict with the May 2021 Amendment, which provides that certain labor claims "shall be resolved exclusively through the Grievance-Arbitration procedure contained in this Agreement," and "shall be subject to final and binding arbitration pursuant to Section 28 of this Agreement." Dkt. 18-2 at 505-06.

*Second*, Plaintiff argues that the mandatory arbitration provision in the May 2021 Amendment lacks sufficient specificity because it does not incorporate "any of the statutory provisions on which plaintiff's causes of action are based." Dkt. 27 at 23 (citation omitted); *see also id.* at 23-26. This argument overlooks that the May 2021 Amendment specifically identifies Cal. Lab. Code § 2699.5, which as noted, incorporates all of the statutes in the California Labor Code that underly Plaintiff's claims. Dkt. 18-2 at 505.[3] The Amendment also identifies Cal. Bus. & Prof. Code § 17200, which is alleged in the

---

[3] The Complaint refers to Cal. Lab. Code § 226.2, which is not specifically identified in Section 2699.5. Complaint ¶¶ 15, 98. Section 226.2 applies to employees compensated on a "piece-rate basis for any work performed during a pay period." The Complaint does not allege that Plaintiff worked on a "piece-rate basis" or that Defendant violated a specific requirement of Section 226.2. Nor is Section 226.2 listed as one of the statutes under which Plaintiff seeks to advance a claim on a class-wide basis. Therefore, the allegations in the Complaint are insufficient to state a claim under Cal. Lab. Code § 226.2. In support of the Motion to Dismiss, Defendant contends that Section 226.2 does not apply to Plaintiff because the CBA prohibits compensation on a piece-rate basis. Dkt. 18-1 at 18 n.6. Plaintiff does not respond to this contention. If Plaintiff were permitted to amend the Complaint, amendment would be futile on this issue because Plaintiff has waived any argument that Section

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

Complaint. *Id.* at 506.

*Olea* considered very similar language in an arbitration clause and concluded that the waiver there was "clear and unmistakable." 2021 WL 1839683, at *5. *Olea* determined that the CBAs that were at issue, "specifically identify Wage Order 16, 'the California Labor Code Sections identified in California Labor Code section 2699.5,' and 'Labor Code section 2698, et seq.'" *Id.* (citation omitted). *Olea* recognized that Section 2699.5 "contains a list of other statutes that would now be subject to arbitration or the grievance procedures under the CBAs." *Id. Olea* also explained that the relevant language does not attempt to "waive all federal and state causes of action," but instead "identifies a statute and then more specifically states that the waiver applies to 'the California Labor Code Sections identified' within that statute." *Id.* Thus, the waiver was "clear and unmistakable." *Id.* The clause at issue here is similar; it refers to "all violations of the California Labor Code sections identified in Labor Code 2699.5." Dkt. 18-2 at 505.

Plaintiff's claim that *Olea* is factually distinguishable is unpersuasive. The decision specifically addressed the same question presented here. *See* Dkt. 27 at 25-26. Plaintiff's citations to *Martinez v. J. Fletcher Creamer & Son, Inc.*, No. CV 10-0968 PSG (FMOx), 2010 WL 3359372 (C.D. Cal. Aug. 13, 2010), and *Loaiza v. Kinkisharyo Int'l, LLC*, No. LA CV19-07662 JAK (KSx), 2020 WL 591328 (C.D. Cal. Oct. 6, 2020), are similarly unpersuasive. Dkt. 27 at 23-25. In *Martinez*, the grievance process outlined in the CBA did "not mention any of the relevant statutes, and the rest of the CBA d[id] not expressly incorporate any statutes, let alone the relevant provisions of the FLSA, the California Labor Code, and the California Business and Professions Code." 2010 WL 3359372, at *4. In *Loaiza*, the mandatory arbitration provisions mentioned violations of "a statutory regulatory and/or common law duty or requirement," and being "paid untimely or inaccurately under applicable state or federal law (i.e., minimum wage, overtime, failure to pay wages)." 2020 WL 591328, at *18. The language in the May 2021 Amendment is significantly more specific and, as noted, parallels the language at issue in *Olea*. *See Olea*, 2021 WL 1839683, at *5 (distinguishing *Loaiza*).

\*       \*       \*

Defendant has established that the applicable collective bargaining agreement has a mandatory arbitration clause that precludes Plaintiff from bringing the present claims in a judicial forum.

D.      Stay or Dismissal

Defendant has requested either dismissal of Plaintiff's claims or, in the alternative, an order compelling arbitration and staying this action. Defendant contends that where, as here, an enforceable arbitration agreement mandates the arbitration of all of a plaintiff's claims, the court lacks subject matter jurisdiction over those claims, and, therefore, must dismiss the entire action.

District courts in this Circuit have reached different outcomes on whether Rule 12(b)(1) is a proper process to seek to compel arbitration. *Compare Pinkerton Tobacco Co., LP v. Art Factory AB*, No. 2:20-CV-01322-SB-MRW, 2021 WL 541441, at *4 (C.D. Cal. Jan. 28, 2021) (collecting cases for the

---

226.2 applies to him. Therefore, to the extent Plaintiff advances a cause of action under Section 226.2, that claim is **DISMISSED WITH PREJUDICE**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

proposition that "enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a motion to dismiss under Rule 12(b)(1)."); *and Hernandez v. Pei Wei Asian Diner LLC*, No. 8:17-CV-00679-JLS-JCG, 2017 WL 6888260, at *2 (C.D. Cal. Oct. 2, 2017) ("Rule 12(b)(1) is an improper vehicle by which to attempt to compel claims to arbitration. . . . ."); *with Cancer Ctr. Assocs. for Rsch. & Excellence, Inc. v. Philadelphia Ins. Cos.*, No. 1:15–CV–00084 LJO, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) (Rule 12(b)(1) is a "procedurally sufficient mechanism" for enforcement of an arbitration agreement); *and Exp. Dev. Canada v. Custom Produce Sales*, No. 121CV00684DADSKO, 2022 WL 2067923, at *3 (E.D. Cal. June 8, 2022) (quoting *GT Sec., Inc. v. Klastech GmbH*, No. 13-CV-3090-JCS, 2014 WL 2928013, at *17 (N.D. Cal. June 27, 2014)) ("Although section four of the FAA provides for the filing of a motion to compel arbitration, courts have held that a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'").

Although the Ninth Circuit has not directly addressed this procedural issue, it has held that when arbitration is mandatory, a district court has discretion either to stay the case pending arbitration or to dismiss the case entirely. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *see also Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed.") (citation omitted). In light of this, a court's determination that claims are subject to mandatory arbitration does not divest it of subject matter jurisdiction over those claims.

Therefore, the present issue is whether a stay or dismissal of this action is more appropriate. Courts have found that a stay is more appropriate under several circumstances: when specific issues are referred to arbitration, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. SharePoint360, Inc.*, No. 18CV249-L(AGS), 2019 WL 1382894, at *3 (S.D. Cal. Mar. 27, 2019); when potential concerns as to the statute of limitations are raised, *Exp. Dev. Canada v. Custom Produce Sales*, No. 121CV00684DADSKO, 2022 WL 2067923, at *9 (E.D. Cal. June 8, 2022); and when the arbitrator must determine arbitrability, *Camp 1 Truckee LLC v. Daxko, LLC*, No. 221CV02064MCEJDP, 2022 WL 3215075, at *10 (E.D. Cal. Aug. 9, 2022). When such issues are not raised, and the arbitration agreement covers all of the claims advanced by a plaintiff, courts have found that dismissal is more appropriate. *See, e.g.*, *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 929 (S.D. Cal. 2021) ("because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration"); *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1126 (N.D. Cal. 2014) ("Because the parties have identified no such concerns [about statutes of limitation] here, and dismissal would render this decision immediately appealable . . ., the Court concludes that dismissal is appropriate.") (citation omitted).

Because the arbitration agreement encompasses all of Plaintiff's claims, dismissal is appropriate, and the parties have not identified any reason not to do so. This dismissal is without prejudice to either party filing an action seeking to confirm or set aside any arbitration award. *See, e.g.*, *Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*, No. CV 14-04419-MMMCWX, 2014 WL 12690187, at *8 (C.D. Cal. Oct. 16, 2014) ("To the extent that either party seeks to have the court enforce the arbitration award once it is made, it can file an action seeking confirmation of the award that, if filed in this district, would undoubtedly be assigned to the court as a related case."); *Balen v. Holland America Line, Inc.*, No. C07–645 RSM, 2007 WL 4190407, *7 (W.D. Wash. Nov. 20, 2007), *aff'd*, 583 F.3d 647 (9th Cir. 2009) Accordingly, Defendant's motion to compel arbitration and dismiss this complaint is **GRANTED**. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-06117 JAK (RAOx) | Date | June 6, 2023 |
|---|---|---|---|
| Title | Arthur Gutierrez v. Anning-Johnson Company, et al. | | |

dismissal is without prejudice to Plaintiff's right to return to this Court for the limited purpose of enforcement of an arbitral award.

**V.     Conclusion**

For the foregoing reasons, the Motion to Remand is **DENIED** and the Motion to Dismiss is **GRANTED**. The parties shall submit the claims advanced in this action to arbitration. This action is **DISMISSED WITHOUT PREJUDICE** to having the merits of the claims determined at the mandatory arbitration as well as without prejudice to the filing of a new action following the completion of the arbitration in which a party seeks to confirm and/or set aside the arbitration award. The Clerk of the Court is directed to close this case.


**IT IS SO ORDERED.**


                                                                    :
                              Initials of Preparer        tj